**AFFIRMED; Opinion Filed March 4, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01495-CR

### DENNIS RAY HAYES, Appellant
### V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the 282nd Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. F-1351915-S

## MEMORANDUM OPINION

Before Justices Francis, Evans, and Stoddart
Opinion by Justice Stoddart

A jury convicted Dennis Ray Hayes of aggravated robbery with a deadly weapon. Hayes pleaded true to two enhancement paragraphs, and the trial court sentenced him to 45 years' confinement. In four issues, Hayes argues the evidence is insufficient to prove his identity, the trial court misstated his rights and he suffered ineffective assistance of counsel, he entered an involuntary plea of true to the enhancement paragraphs, and the evidence supporting the enhancements is insufficient. We affirm the trial court's judgment.

FACTUAL BACKGROUND

Lejla Pracic was a cashier at a Family Dollar store when a man tried to purchase a bottle of dish soap. Pracic testified the customer was "[j]ust like any other customer, [he] put it on the counter, I rang it up, put it in a bag. He gave me his money and I go to close the drawer, and that's when he reached over to grab the till out of the drawer." He pointed his gun at Pracic.

The robber instructed Pracic to tell the store manager to open the store's safe. Before the assistant store manager, Alicia Blackburn, could open the safe, the robber left the store. Although Pracic said she would not be able to identify the robber, she described him as black, and wearing a gray hoodie and "maybe a baseball cap."

Blackburn testified that on the night of the robbery, she heard Pracic "start screaming for me to come up to the front." Blackburn went to the front of the store where she saw a man pointing a gun at Pracic. Blackburn walked behind the counter and the man followed her. The robber wanted Blackburn to open the safe. When Blackburn told him it takes ten minutes to open the safe, the robber left the store.

Blackburn described the man as black, medium build, and wearing a gray hoodie or sweatshirt. He was not wearing a mask. Blackburn went to the police station to view a photo lineup. She thought there were "two pictures that both of them bared [sic] resemblance, but I couldn't say a hundred percent."

Michael Mulkey, a police officer with the Dallas Police Department, testified he was called to the Family Dollar store after the robbery. While processing the crime scene, Mulkey dusted the bottle of dish soap for fingerprints, and he was able to lift latent prints from the bottle. On cross-examination, Mulkey testified it would be possible for fingerprints to remain on the soap bottle for a week if no one else touched the bottle or disturbed it.

Tammy McLean testified as a fingerprint expert. McLean analyzed the latent prints lifted by Mulkey and concluded two of the latent prints had sufficient ridge detail to compare to inked prints. She put the prints through a database and determined the prints belonged to Dennis Hayes.

Angela Nordyke, a detective with the Dallas Police Department, investigated the case involving Hayes. She talked to Pracic and Blackburn about the robbery and they gave her a

description of the robber. Nordyke had a photo lineup administered to Blackburn. Blackburn selected two photographs, but could not determine which one was the robber. One of the photos selected by Blackburn was a picture of Hayes. Nordyke did not administer a photo lineup to Pracic.

Nordyke also viewed the surveillance video and saw the robber was wearing a gray hoodie with black lining, jeans, black shoes with reflective toes, and a black hat. When she initially contacted Hayes, she noticed he appeared to be wearing the same grey hoodie sweatshirt with black lining and the same shoes that the robber in the video was wearing. She testified that in her experience, she does not see many gray hoodie sweatshirts with black linings. The shoes stood out to her because they have "a reflector thing on the toe."

LAW & ANALYSIS

A.     Sufficiency of the Evidence

In his first issue, Hayes argues the evidence is insufficient to prove his identity. Hayes does not challenge whether an aggravated robbery occurred; Hayes contends that there is insufficient evidence identifying him as the person who committed the offense.

We review a challenge to the sufficiency of the evidence of a criminal offense for which the State has the burden of proof under the single sufficiency standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). We examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Id.* We defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). When the record supports conflicting inferences, a reviewing court must "presume that the factfinder resolved the

–3–

conflicts in favor of the prosecution" and defer to that determination. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

The evidence shows Hayes's fingerprints were on the soap bottle that the robber placed on the counter. Further, when Nordyke initially contacted Hayes, he was wearing a gray hoodie sweatshirt with black lining and black shoes with reflective toes that looked like the garments the robber was wearing on the surveillance video. Nordyke testified the black lining in the hoodie and the reflective toe of the shoes were not common. Finally, in the photo lineup, Blackburn narrowed the photos to two people who she thought looked like the person who robbed the Family Dollar—one of those photos was a picture of Hayes. Viewing all the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have found beyond a reasonable doubt that Hayes was the person who committed the robbery. *See Matlock*, 392 S.W.3d at 667; *see also Penney v. State*, No. 05-08-00494-CR, 2009 WL 1058742, at *3-4 (Tex. App.—Dallas Apr. 21, 2009, pet. ref'd) (not designated for publication).

Although Hayes suggests that he could have handled the bottle of soap on a different day and his fingerprints could have remained on the bottle that the robber placed on the counter, the record does not show Hayes was in the Family Dollar store on a prior occasion. The record does not support Hayes's argument.

We overrule Hayes's first issue.

### B. Constitutional Claims

In his second issue, Hayes argues his due process rights were violated when he waived his right to testify in mitigation of punishment on the basis of incorrect information from the trial court. He also asserts he suffered ineffective assistance of counsel. At the punishment phase of the trial, the following exchange occurred:

> THE COURT: Okay. Mr. Hayes, you have a right to testify at this proceeding. You also have a right not to testify at this proceeding. And just like

the jury, I'm not going to hold it against you or take it as a circumstance against you in the event if you choose not to testify. It is a right that you have and you have alone. There are certain things that you could hurt yourself by testifying. I'm going to go over those, and that is if you decide to testify, the State could ask you questions regarding the - - the offense. They could ask you any question they want to, and including whether or not you did it. And at that time, you got to make a decision, and you could say either yes, I did it; or, no, I didn't do it. But I accept the jury's verdict, if you do say, yes, I did it, it would have certain collateral consequences for you on -- on appeal.

Have you gone over that -- all of those things with your lawyer?

THE DEFENDANT: Yes, I have.

THE COURT: Okay. Do you have any questions about that at all?

THE DEFENDANT: No, sir.

The defense did not call any witnesses in the punishment phase.

On appeal, Hayes argues the trial court misinformed him that there could be collateral consequences on appeal if he testified he committed the crime. As a result, he asserts, he involuntarily waived his right to present mitigating evidence. He further asserts he was deprived of effective assistance of counsel because his lawyer did not "correct" the trial court's misstatement.

In his brief, Hayes assumes the "collateral consequences" to which the trial court referred was the now-overruled *DeGarmo* doctrine that a defendant who testified and admitted guilt at the punishment phase waived his right to challenge the sufficiency of the evidence. *See Jacobson v. State*, 398 S.W.3d 195, 196-97 (Tex. Crim. App. 2013) (overruling *DeGarmo v. State*, 691 S.W.2d 657 (Tex. Crim. App. 1985)) ("a defendant who testifies at the punishment stage of trial and admits his guilt does not forfeit his right to complain on appeal about errors occurring during the guilt stage."). However, the record does not support that conclusion. The trial court specifically instructed Hayes he had a right to testify at the punishment proceedings and the trial court would not hold it against him if he did not do so. The trial court further asked Hayes if Hayes's counsel had "gone over . . . all of those things" with him; Hayes stated his counsel had and he did not have questions. Although Hayes filed a motion for new trial, this issue was not

raised in the motion.  Further, there is no evidence in the record about why Hayes opted not to testify, whether he would have admitted guilt if he had testified, or what advice he received from his lawyer.  Based on this record, we cannot assume Hayes understood the trial court's statement to mean Hayes could not challenge the sufficiency of the evidence on appeal if he admitted guilt.  Similarly, we cannot conclude Hayes's constitutional rights were violated by the trial court's statement that there could be collateral consequences on appeal if he testified he committed the crime.

Hayes also asserts he suffered ineffective assistance of counsel because his lawyer did not "correct" the trial court's "collateral consequences" statement.  To prevail on an ineffective assistance of counsel claim, an appellant must show counsel's performance fell below an objective standard of reasonableness and a reasonable probability exists that but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999).   The record must be sufficiently developed to overcome the strong presumption of reasonable assistance.  *Thompson v. State*, 9 S.W.3d 808, 813–14 (Tex. Crim. App. 1999).  In general, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance.  *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003).  We presume a sound trial strategy in the absence of evidence of counsel's strategic motives.  *Thompson*, 9 S.W.3d at 813–14.  We will not reverse for ineffective assistance when counsel's actions or omissions may have been based on tactical decisions, but the record does not explain the reasons for counsel's decisions.  *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011).  Absent an opportunity for trial counsel to explain his conduct, we should not find ineffective assistance unless the challenged conduct was "so

outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

Hayes did not raise his claim of ineffective assistance of counsel in the trial court or otherwise develop a record showing what advice Hayes received from his counsel or why his counsel did not "correct" the statement about which Hayes complains on appeal. The record includes no evidence to overcome the presumption that Hayes's counsel provided reasonable assistance. *See Rylander*, 101 S.W.3d 110–11. Because it is not apparent that the trial court misstated the law, the decision by Hayes's counsel not to object was not "so outrageous that no competent attorney would have engaged in" that action. *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). Further, the record does not show how Hayes would have testified, whether he would have admitted guilt, or how his testimony (if any) would have affected the outcome of the trial. In light of this record, we conclude Hayes has not demonstrated that his trial counsel's performance was deficient or that the outcome of his trial would have been different but for his counsel's actions.

We overrule Hayes's second issue.

**C.     Enhancement Paragraphs**

In his third and fourth issues, Hayes argues the trial court violated his due process rights by accepting his pleas of true to the enhancement allegations when the allegations were unclear and the evidence is insufficient to prove the enhancement allegations.

The State filed two notices of enhancement allegations prior to trial. The first notice included allegations of two prior convictions, stating:

> And it is further presented to said Court that prior to the commission of the aforesaid offense, the said defendant was convicted of a felony offense of FELON IN POSSESSION OF A FIREARM, on the 22nd day of MARCH, 1994, A.D., in Cause Number CR-93-590-1 on the docket of ELEVENTH DISTRICT, FIRST DIVISION, of JEFFERSON COUNTY, ARKANSAS under the name of DENNIS HAYES and said conviction was a final conviction,

And further, presented to said Court that prior to the commission of each of the aforesaid offenses, the said defendant was convicted of a felony offense of BURGLARY, on the 6th day of JANUARY 1992, A.D., in Cause Number CR-91-612 on the docket of ELEVENTH, WEST DISTRICT FIRST DIVISION, of JEFFERSON COUNTY, ARKANSAS under the name of DENNIS HAYES and said conviction was a final conviction.

The second notice also included allegations of two prior convictions, stating:

And it is further presented to said Court that prior to the commission of the aforesaid offense, the said defendant was convicted of a felony offense of ROBBERY, on the 13th day of NOVEMBER, 2001, A.D., in Cause Number CR-2000-863-2 on the docket of the ELEVENTH WEST JUDICIAL DISTRICT, SECOND DIVISION, JEFFERSON COUNTY, ARKANSAS under the name of DENNIS RAY HAYES and said conviction was a final conviction,

And further, presented to said Court that prior to the commission of each of the aforesaid offenses, the said defendant was convicted of a felony offense of FELON IN POSSESSION OF A FIREARM, on the 22nd day of MARCH, 1994, A.D., in Cause Number CR-93-590-1 on the docket of ELEVENTH DISTRICT, FIRST DIVISION, of JEFFERSON COUNTY, ARKANSAS under the name of DENNIS HAYES and said conviction was a final conviction.

The record shows the State arraigned Hayes on enhancement paragraphs. However, the record does not reflect which enhancement paragraphs were read. Rather, the reporter's record shows:

THE COURT: And you've got enhancement paragraphs as well?

[STATE]: Yes, Your Honor, do you want me to arraign him on those as well?

THE COURT: Yes.

([State] read the enhancement paragraphs to defendant.)

. . .

THE COURT: And to the enhancement paragraphs that were read, how do you plead, true or not true?

[DEFENSE COUNSEL]: Your Honor, is that something that we can take up later?

THE COURT: We can take it up later. I think what - - the way that we normally do it is, that you enter a plea of not true at this time; however, you would certainly be afforded a right to change your plea to true should you so desire.

So the Court will enter pleas of not true on behalf of the defendant at the [sic] he has the absolute right to be able to change that.

After the jury found Hayes guilty of aggravated robbery, the trial court conducted sentencing proceedings.  The following exchange occurred:

> THE COURT: There are two enhancement paragraphs that at the outset you entered pleas of not true to. It's my understanding that you wish to plead true to those offenses.  You don't have to plead true to the offenses.  You can stick with a plea of not true and put the State to their -- to their -- to their burden.  But it's in fact your desire to plead -- to change your plea from true to not true [sic] to the paragraphs?
> THE DEFENDANT: Not true -- I mean, true.
> THE COURT: True. Okay. You talked to your lawyer about that?
> THE DEFENDANT: Yes, sir.
> THE COURT: All right. Pleas of true are entered.
> You understand that that makes the minimum 25 to life?
> THE DEFENDANT: Yes, sir.
> THE COURT: Okay.  All right.  Pleas of true are entered to the enhancement paragraphs.  And to - - the Court finds them to be true as well.

The State then offered Exhibit 48, which it described as "the pen packet from Arkansas Department of Corrections," containing "two paragraphs in the penitentiary packet and also contains other priors."  The exhibit was admitted without objection.  The exhibit shows Hayes was convicted of all three offenses included in the notices of enhancements.

The record shows that at the beginning of the proceedings, the State "read the enhancement paragraphs to defendant" and Hayes pleaded not true.  After consulting with his lawyer, Hayes subsequently changed his plea to true.  During the entirety of the proceedings, Hayes was represented by counsel.  There is no indication that anyone—the trial judge, the State, Hayes, or Hayes's counsel—was confused about which enhancement paragraphs were at issue. When the trial court reintroduced the subject of the enhancement paragraphs, Hayes pleaded true without objecting the allegations were unclear.  He also informed the trial court he had discussed his plea with his lawyer.  The record supports the conclusion that Hayes and his counsel knew what the enhancement allegations were, discussed the enhancements being alleged by the State,

and discussed Hayes's plea to those enhancement. The record does not support Hayes's claim that the allegations being made by the State were unclear.

Additionally, if the enhancement allegations being made by the State were unclear to Hayes, Hayes was required to object to preserve his complaint for appeal. *See* TEX. R. APP. P. 33.1(a). Hayes did not do so, and we conclude Hayes has not preserved this complaint for appeal. We overrule Hayes's third issue.

To establish a prior conviction for purposes of enhancement, the State must prove two elements beyond a reasonable doubt: (i) the existence of a prior conviction; and (ii) the defendant's link to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). A defendant's plea of "true" to the enhancement allegation satisfies the State's burden of proof. *Wilson v. State*, 671 S.W.2d 524, 525 (Tex. Crim. App. 1984). Once a defendant pleads "true" to an enhancement allegation, he cannot thereafter complain the evidence is insufficient to support it. *Harvey v. State*, 611 S.W.2d 108, 111 (Tex. Crim. App. 1981) (op. on reh'g).

The reporter's record and the judgment reflect Hayes pleaded true to the enhancement paragraphs and the trial court found the enhancement paragraphs to be true. Hayes's plea of true constituted sufficient proof to support the enhancement allegations. We overrule Hayes's fourth issue.

CONCLUSION

We affirm the trial court's judgment.


Do Not Publish
TEX. R. APP. P. 47
131495F.U05

/ Craig Stoddart/
CRAIG STODDART
JUSTICE

–10–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

DENNIS RAY HAYES, Appellant

No. 05-13-01495-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1351915-S.
Opinion delivered by Justice Stoddart.
Justices Francis and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 4th day of March, 2015.